IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   13-cv-01661-MJW

JASON O. SPURLOCK,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Jason Spurlock is not disabled for purposes of

Social Security Disability Insurance and Supplement Security Income.  Spurlock has

asked this Court either to reverse that decision or to remand for further hearing.

The Court has jurisdiction under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Both parties have agreed to have this case decided by a U.S. Magistrate Judge under

28 U.S.C. § 636(c).  The Court AFFIRMS the government's determination.

## Factual Background

In 2003 and 2004, Spurlock suffered two injuries at work.  First, while climbing a

ladder, a rung broke and he fell to the floor—injuring a knee.  Second, while unloading a

truck some months later, he hurt his back.  A workers' compensation doctor described

the condition as a musculolingamentous strain of the lumbar spine; later radiology tests

providing more detail as to the specific protrusions, tears, and degenerative disease.

Over time, Spurlock's treating physicians have suggested surgery to repair his back, but

2

he has consistently opted against it for various reasons (some more plausible than others). Spurlock has also been diagnosed with attention deficit hyperactivity disorder ("ADHD") and developmental dyslexia since youth. Since suffering his injuries, he has developed depression and anxiety disorders.[1]

In 2010, Spurlock applied for disability benefits. The government denied his claim, and he requested a hearing before an administrative law judge ("ALJ").

The ALJ also denied his claim, after applying the five-step sequential process called for by 20 C.F.R. §§ 404.1420(a) and 416.920(a). At the second step of that analysis, the ALJ determined:

> The claimant has the following severe impairments: chronic back pain secondary to musculoligamentous sprain-strain with degenerative disc and joint disease of the thoracolumbar spine, major depressive disorder, generalized anxiety disorder, [ADHD] with developmental dyslexia, marijuana abuse, and possible somatoform disorder.

At the third step of analysis, the ALJ found that these limitations do not meet or medically exceed the listed impairments that would automatically qualify Spurlock as disabled. Spurlock does not challenge these determinations.

Before proceeding to the fourth step of analysis, the ALJ performed the required analysis of Spurlock's residual functional capacity ("RFC"). There, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b) except lift or carry twenty pounds occasionally and ten pounds frequently, sit without restrictions but with normal breaks, stand and walk two hours in an eight-hour workday, avoid uneven surfaces prophylactically, occasionally stop and bend, climb

---

[1] Spurlock has complained of other ailments—trauma to his hand, trauma to his arm, urinary incontinence, and a few others—some of which are medically substantiated and some are not. In this appeal, however, he does not argue that the government made any errors related to these other ailments.

stairs but not ladders, no work at heights or balancing, occasionally squat, kneel, crawl, and pivot, no running or jumping, work in an air conditioned setting for temperature control, and simple repetitive tasks involving no interaction with the public and no tasks requiring hypervigilance.

Given that RFC determination, the ALJ concluded that Spurlock could not perform his old jobs, but that he could perform other work that exists in significant numbers in the national economy. It is this RFC determination and the resulting vocational analysis that Spurlock challenges.

## <u>Analysis</u>

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Spurlock presents two arguments for reversal or remand. First, he contends that the ALJ failed to apply the correct legal standards when assigning weight to certain medical opinions. Second, Spurlock contends that RFC gave short shrift to his mental limitations—applying the wrong legal standards, leading to a factually unsupported vocational analysis.

4

## I. **Proper Weighing of Medical Opinions**

By law, an ALJ must discuss the weight given each medical opinion in the record.

20 C.F.R. § 404.1527(c).  However, "medical opinion" is a defined term:

> Medical opinions are statements from physicians and psychologists or
> other acceptable medical sources that reflect judgments about the nature
> and severity of your impairment(s), including your symptoms, diagnosis
> and prognosis, what you can still do despite impairment(s), and your
> physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).  Moreover, opinions as to whether someone is "disabled,"

"unable to work," or similar legal determinations are not treated as medical opinions.  20

C.F.R. § 404.1527(d).  The ALJ need not explicitly weigh evidence that falls outside

legal definition of a medical opinion.  *See Welch v. Colvin*, ___ F. App'x ___, 2014 WL

1853905, at *1–2 (10th Cir. May 9, 2014); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th

Cir. 2008).  For evidence *other than* medical opinions, the ALJ can deal with it in any

reasonable way.

Medical opinions (as defined by the regulation) come in a few varieties, with the

most important category being the opinions of "treating sources."  That term is defined

in the regulations:

> *Treating source* means your own physician, psychologist, or other
> acceptable medical source who provides you, or has provided you, with
> medical treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.  Generally, we will consider that you have
> an ongoing treatment relationship with an acceptable medical source
> when the medical evidence establishes that you see, or have seen, the
> source with a frequency consistent with accepted medical practice for the
> type of treatment and/or evaluation required for your medical condition(s).
> We may consider an acceptable medical source who has treated or
> evaluated you only a few times or only after long intervals (e.g., twice a
> year) to be your treating source if the nature and frequency of the
> treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1502.  If the medical opinion of a treating source is in the record, and it passes a specific legal test, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2).  Otherwise, the ALJ must give "good reasons" for not assigning it controlling weight and must still weigh it along with the other medical opinions.  *Id.*

If no opinion is given controlling weight, the ALJ must consider all of the medical opinions in the record.  20 C.F.R. § 404.1527(b).  The ALJ must weigh those opinions according to certain factors: (1) whether the source of the opinion actually examined the claimant; (2) whether and to what extent the source of the opinion had a treatment relationship with the claimant; (3) whether the source's opinion is supported by evidence and explanation; (4) whether the opinion is consistent with the record as a whole; (5) whether the source of the opinion is a specialist; and (6) whether any other factors tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).  The ALJ need not address each and every factor, nor even explicitly reference the factors; rather, the ALJ need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  Finally, in almost every case, the record will contain opinions and findings from consultants employed by a state disability agency; these are weighed according to the same rules as medical opinions.  20 C.F.R. § 404.1527(e)(2).

Here, Spurlock objects to the ALJ's treatment of evidence from three sources: (1) Dr. Hamid Rahman and his assistant Dr. Q. Nguyen, who are both orthopedists working with California's workers' compensation agency; (2) Dr. Nelson Flores, a psychologist

who performed a mental evaluation of Spurlock at Dr. Rahman's referral; and (3) Dr.

Harry Webb, a family physician at Spurlock's primary care clinic.

### A.    Drs. Rahman & Nguyen

Spurlock first contends that the ALJ "fail[ed] to credit Dr. Rahman's consistent

finding that Mr. Spurlock had serious, chronic, painful conditions that rendered him

disabled," and gave insufficient deference to Dr. Rahman's "opinion that Mr. Spurlock's

condition was unlikely to improve" (Docket No. 15, p. 33).   Spurlock does not provide

any further detail as to what part of Dr. Rahman's findings he believes the ALJ failed to

credit, nor at which step of the ALJ's five-step analysis the error occurred.

As to the legal standards the ALJ was required to apply, there is one document in

Dr. Rahman's and Nguyen's records—a February 21, 2005 evaluation—that constitutes

a "medical opinion" under 20 C.F.R. § 404.1527(a)(2); it not a medical opinion from a

"treating source" 20 C.F.R. § 404.1527(c).  Some of remaining documents are from a

treating source and some are not, but none are medical opinions that the ALJ was

required to weigh under 20 C.F.R. § 404.1527(c).  The Court comes to these

conclusions for three reasons.

First, Dr. Rahman's February 21, 2005 orthopedic evaluation "reflect[s]

judgments about the nature and severity" of Spurlock's impairments, including

"symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and

[his] physical or mental restrictions" (*see* AR 297).  It is therefore a medical opinion

under 20 C.F.R. § 404.1527(a)(2) and must be weighed according to the factors in 20

C.F.R. § 404.1527(c).

7

Second, none of the remaining documents from Drs. Rahman and Nguyen include such judgments about Spurlock's functional limitations or restrictions.  Almost all of them include a finding that Spurlock is "temporarily totally disabled" (*see, e.g.*, AR 281–87, 401, 403), but those findings are an issue reserved to the Commissioner, and not a medical opinion.[2]  20 C.F.R. § 404.1527(d); *see also* 20 C.F.R. § 404.1504.  Accordingly, these records are treated as ordinary medical records rather than medical opinions to be weighed under 20 C.F.R. § 404.1527(c).

Third, the first indication of medical treatment by Drs. Rahman and Nguyen came in September 2005, when Dr. Nguyen observed that no progress has been made under the treatment of Spurlock's "own private physician" and began to prescribe medication and other treatment for the first time (AR 288–89).  Before that point, Drs. Rahman and Nguyen had served only as consulting examiners in the workers' compensation program and had not treated Spurlock's conditions for medical purposes (*see* AR 291–307).  Accordingly, records from before September 2005 are not records from "treating sources."  *Cf.* 20 C.F.R. § 404.1502 ("We will not consider an acceptable medical

---

[2] Dr. Rahman also describes Spurlock's condition as "permanent and stationary" for purposes of the workers' compensation case (AR 296).  This, too, is a legal term of art—and like a State agency's finding of "disabled" status, it is not a "medical opinion" under the Commissioner's regulations.  *Hunter v. Astrue*, 874 F. Supp. 2d 902, 910 n.9 (C.D. Cal. 2012).  It must therefore be considered along with the remaining medical evidence, rather than weighed under subsection (c).  *See id.*; 20 C.F.R. § 404.1527(d), (e)(2); Social Security Ruling 96–8p, 1996 WL 374184, at *8 n.8.

On a related note, although Dr. Rahman describes Spurlock's condition as "permanent and stationary," the ALJ twice notes that Dr. Rahman did not make a "permanent and stationary report" (AR 28, 32–33).  The ALJ's statements do not contradict or ignore Dr. Rahman's finding.  Rather, a "permanent and stationary *report*" is a final report to the workers' compensation agency, submitted on one of two specific forms.  CAL. CODE REGS. tit. 8, § 8785(h).  Neither of those forms is in the record in this case.

source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a nontreating source.").  As a result, the records the predate September 2005, including the February 2005 medical opinion (AR 291–99), are from a nontreating source; the records that postdate September 2005 are from a treating source.

There are three parts of the five-step analysis where the ALJ considers medical records: the second step, determining whether there are severe impairments; the third step, determining whether those impairments meet or medically equal certain listed impairments; and the RFC analysis that precedes the fourth step.  *See generally* 20 C.F.R. § 404.1520(a).

At the second step of analysis, the ALJ found that Spurlock suffered from a severe physical impairment: "chronic back pain secondary to musculoligamentous sprain-strain with degenerative disc and joint disease of the thoracolumbar spine" (AR 28).  This is materially similar Dr. Rahman's February 2005 medical opinion of beginning diagnosis of "musculoligamentous sprain/strain of the lumbar spine" with a herniated disc (AR 296).  It is also consistent with the rest of Dr. Rahman's and Dr. Nguyen's records.  If the ALJ's second-step analysis rejects any portion of Dr. Rahman's spinal diagnoses, that rejection is not obvious to the Court and has not been explained by Spurlock.  Accordingly, it appears the ALJ gave Dr. Rahman's opinion the weight Spurlock seeks, at least as to spinal issues.  Aside from the spinal issues, Dr.

9

Rahman also diagnosed Spurlock with internal derangement of the left knee (AR 296), and the ALJ did not include any such limitation in his second-step analysis (*see* AR 28). But Spurlock has not argued in this Court that his knee injury rises to the level of a "severe impairment" for purposes of the second-step analysis (*see* Docket No. 15, pp. 32–34). Further, even if the ALJ erred at this step, that error is harmless because the ALJ proceeded to consider the remaining steps. *Carpenter v. Astrue*, 537 F.3d 1264, 1265–66 (10th Cir. 2008). Accordingly, the Court sees no reversible error in the ALJ's second-step treatment of Dr. Rahman's opinion and records.

As to the third step of analysis, Spurlock does not contend in this Court that his physical impairments meet or medically equal any "listed impairment" from 20 C.F.R. Part 404, Subpart P, Appendix 1 (*see* Docket No. 15, pp. 32–34). The Court declines to consider the issue *sua sponte*.

Finally, the Court does not see where the ALJ's RFC analysis substantially departs from either Dr. Rahman's 2005 medical opinion or any of the rest of the records from Drs. Rahman and Nguyen. First, none of the records other than Dr. Rahman's 2005 medical opinion offers any judgment as to Spurlock's functional limitations or restrictions. Second, Dr. Rahman's 2005 medical opinion offers this description:

> Based on the subjective and objective factors of disability of the left knee the patient is precluded from activities of prolonged standing and repetitive kneeling, stopping and squatting and ascending/descending stairs, ramps and ladders.
>
> The lumbar spine disability precludes the patient from heavy work and from activities requiring prolonged weight bearing and prolonged standing activities. The patient should also avoid activities requiring repetitive bending and stopping and he should not carry more than 15 pounds of

> weight.  He should avoid work in a cold or damp climate.  The patient
> should wear a lumbosacral corset during work duties.

(AR 298).  By comparison, the ALJ's RFC conclusion was that Spurlock could:

> perform light work . . . except [he can only] lift or carry twenty pounds
> occasionally and ten pounds frequently, sit without restrictions but with
> normal breaks, stand and walk two hours in an eight-hour workday, avoid
> uneven surfaces prophylactically, occasionally stop and bend, climb stairs
> but not ladders, no work at heights or balancing, occasionally squat, kneel,
> crawl, and pivot, no running or jumping, work in an air conditioned setting
> for temperature control.

(AR 32).  These do not appear materially different from Dr. Rahman's findings.  To wit:

Dr. Rahman found that Spurlock "should not carry more than 15 pounds," where the

ALJ found that Spurlock could only "lift or carry twenty pounds occasionally and ten

pounds frequently."  This is not substantially inconsistent; the ALJ is simply more

specific as applied to frequent versus occasional lifting.  Similarly, Dr. Rahman found

that Spurlock "is precluded from activities of prolonged standing"; the ALJ found that

Spurlock could only "stand and walk two hours in an eight-hour workday."  This is not

substantially inconsistent; it is simply more specific as applied to a workday.  There are

no identifiable parts of Dr. Rahman's opinion that the ALJ failed to adopt, in some way,

in his RFC analysis.

It should be noted that the ALJ's physical RFC conclusions were adopted

verbatim from the hearing testimony of a medical consultant (*compare* AR 32 (ALJ's

determination), *with* AR 47 (testimony of Dr. Landau)).  But that testimony itself adopted

all relevant portions of Dr. Rahman's medical opinion and other records (AR 48–50).

And further, in the ALJ's narrative analysis, he described and relied on Dr. Rahman's

records (*see* AR 28–29, 32–33).  The verbatim nature of the ALJ's reliance on the

consultant does not, therefore, suggest that the ALJ discounted Dr. Rahman's opinion.

Accordingly, the Court finds that the ALJ applied the correct legal standards to

Dr. Rahman's February 2005 opinion, as well as to the rest of Dr. Rahman's and Dr.

Nguyen's records.

**B.    Dr. Webb**

Next, Spurlock objects to the ALJ's treatment of Dr. Webb's opinions.  According

to Spurlock, Dr. Webb is "another treating physician [who] presented two opinions that

Mr. Spurlock could not work" (Docket No. 15, p. 33).  Dr. Webb did, indeed, fill out

several forms indicating that Spurlock was incapable of more or less any physical

activity (AR 635–38; 691–94; 696–703; *see also* AR 627–31, 708–12 (Dr. Webb's

treatment records)).  These documents were explicitly discounted by the ALJ:

> The doctor however has provided no significant medical findings to
> support such extreme limitations as well as indicating that he was relying
> on others who have diagnosed depression.  Moreover, there is no
> indication that the doctor has referred the claimant for any further
> evaluation for his musculoskeletal and mental disorders.  Regardless . . .,
> greater weight must be given to the consultative medical examiner's
> findings . . . and in turn the findings of Dr. Landau at the hearing.

(AR 33).  The government's response brief does not mention the weight to be given Dr.

Webb's opinions (*see* Docket No. 18, pp. 18–21).

The Court need not decide whether Spurlock is right about Dr. Webb's status as

a treating physician or about his findings qualifying as medical opinions—because even

if Spurlock is right, the ALJ nonetheless applied the right legal standards.  Under 20

C.F.R. § 404.1527(c), a treating source's medical opinion is entitled to controlling weight

only if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record . . . ."  If that test is not met, the ALJ must give "good reasons"—meaning specific, legitimate reasons—for not assigning controlling weight and must still weigh the opinion using the factors for weighing all medical opinions in 20 C.F.R. § 404.1527(c)(1)–(6).  *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003). Here, the reasons given by the ALJ are good reasons, inasmuch as they are specific, legitimate, and accurate.  And while the ALJ did not expressly determine whether Dr. Webb was a treating physician or entitled to controlling weight, the good reasons he gave establish that the opinions were not "supported by medically acceptable clinical and laboratory diagnostic techniques" and were "inconsistent with the other substantial evidence in [the] record."  Finally, the reasons touch on several of the § 404.1527(c) factors for weighing noncontrolling opinions—supportability, doctor's specialty, and consistency with the overall record, to be specific.  Accordingly, even if Spurlock is right about the legal standards that should be applied to Dr. Webb's opinions, the ALJ applied those standards correctly.

### C.    Dr. Flores

Spurlock objects to the ALJ's treatment of the medical opinion of Dr. Flores.  As with Spurlock's objection about Dr. Rahman, this is somewhat unusual—because the ALJ accepted Dr. Flores's opinion, and even relied in part on Dr. Flores while limiting the weight of opinions that were more damaging to Spurlock's cause (*see* AR 31 ("Given the consistency of the findings of the treating psychologist in 2007 [Dr. Flores],

the consultative psychological examiner [Dr. Michaels], and Dr. Glassmire at the

hearing, little weight can be given to the finding of nonsevere mental impairment by the

State agency psychiatric consultants [Drs. Brooks and Balson].")).  Thus, it is immaterial

whether Dr. Flores's views are the medical opinion of a treating source and therefore

"entitle[d]" to "significant deference," as Spurlock contends (Docket No. 15, p. 33).

Either way, the ALJ gave Dr. Flores's opinion the weight Spurlock seeks.

In fact, there are only two ways in which Dr. Flores's opinions are even arguably

inconsistent with the ALJ's findings.  First, in May 2006, Dr. Flores described Spurlock

as "temporarily totally disabled" for purposes of the workers' compensation program (AR

593)—a conclusion the ALJ did not adopt.  But this is a legal conclusion that an ALJ is

not required to consider expressly.  20 C.F.R. §§ 404.1504, 404.1527(d), (e)(2).  And

Dr. Flores did not augment that disability conclusion with any specific judgments as to

Spurlock's functional limitations or restrictions (*see* AR 584–96); accordingly, the May

2006 evaluation is not a "medical opinion" that the ALJ was required to weigh explicitly.

Further, even if it were a medical opinion, it predated the treatment relationship and

therefore would not have been entitled to controlling weight under 20 C.F.R.

§ 404.1527(c).  To the extent the ALJ's opinion is inconsistent with the disability

conclusion of Flores's opinion, the ALJ did not commit reversible error.

Second, while reviewing another doctor's evaluation of Spurlock, Dr. Flores said

this:

On page fifteen, Dr. Cohen provided the following Work Function
Impairments:

14

1)      Ability to comprehend and follow instructions.  Level of Impairment: Moderate.

2)      Ability to perform simple and repetitive tasks.  Level of Impairment: Slight.

3)      Ability to maintain a work pace appropriate to a given workload. Level of Impairment: None.

4)      Ability to perform complex and varied tasks.  Level of Impairment: Moderate.

5)      Ability to relate to other people beyond giving and receiving instructions.  Level of Impairment: Moderate.

6)      Ability to influence people.  Level of Impairment: Moderate.

7)      Ability to make generalizations, evaluations or decisions without immediate supervision.  Level of Impairment: Moderate.

8)      Ability to accept and carry out responsibility for direction, control and planning.  Level of Impairment: Moderate.

<u>Comment</u>

I believe the Dr. Cohen ignores his own medical evidence, particularly with regards to the results of his Objective Psychological testing . . . .

*This medical information in and of itself would suggest Moderate to Moderate to Severe impairments in the above Work Functions.*

Thus in a review of all the above information, my views as previously expressed remain unchanged.

(AR 564–65) (emphasis added).  This discussion is directly analogous to the

"Paragraph B" criteria that the government uses for translating mental impairments into

measurable functional limitations. *See* Social Security Ruling 96–8p, 1996 WL 374184,

at *4 (describing "psychiatric review technique"); 20 C.F.R. § 404.1520a(b)–(c) (rules for

evaluating mental impairments).  Where Dr. Flores speaks of "moderate" and "moderate

to severe" levels for purposes of the California workers' compensation program, the

Social Security Administration's analogous psychiatric review technique levels are "moderate" and "marked."  And where Dr. Flores stated that each limitation should be graded at one of those two levels, the ALJ graded all functional limitations at the "moderate" level, grading none of them at the "marked" level (AR 30).  The ALJ's analysis is therefore inconsistent with Dr. Flores's opinion, to the extent Dr. Flores suggests some of the functional abilities should be graded as "marked."  But Dr. Flores did not opine on where or why he might prefer "moderate to severe" instead of "moderate."  Instead, he defers to his unchanged "views as previously expressed."  In context, that's a reference to his June 2006 letter—which does not offer any greater detail on the topic (*see* AR 599–600) ("The patient's anxiety and depressive symptoms seem to interfere with his daily adjustments.  The patient was alert and there was no indication of brain disorder or neuropsychological impairment.  The test data suggests that the patient's intellectual functioning is significantly impacted by his current set of symptoms.").  Ultimately, the ALJ graded Spurlock's functional limitations at the low end of Dr. Flores's suggested range—but still within that suggested range.  As a result, it can't be said that Dr. Flores's opinion is inconsistent with the ALJ's findings.

Although Spurlock objects to the ALJ's treatment of Dr. Flores's opinion, Spurlock doesn't explain to the Court why he objects, or what differences he perceives between Dr. Flores's opinion and the ALJ's findings (*see* Docket No. 15, pp. 33–34). Accordingly, the Court sees no reversible error.

## II.   Proper Consideration of Mental Limitations in RFC & Vocational Analysis

Spurlock also argues that the ALJ applied the wrong legal standard by failing to include all of Spurlock's relevant mental limitations in the RFC analysis—leading to an incorrect RFC finding and thus a factually unsupported vocational analysis.  The legal standard Spurlock points to is this one:

> (e) Total limiting effects.  When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, *we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. . . .*

20 C.F.R. § 404.1545(e) (emphasis added).  Spurlock argues that the ALJ's analysis fails to consider Spurlock's non-severe limitations—specifically, his "undisputed inability to sit still for extended periods of time due to his ADHD" (Docket No. 15, p. 34).

The ALJ did include a non-severe functional limitation in his RFC conclusion, however, and it goes to Spurlock's exact point: "no tasks requiring hypervigilance" (AR 32).  Spurlock finds this to be an insufficiently harsh description of his limitations, because, he says, at times he can't sit still for even fifteen minutes (AR 72).  But the only evidence in the record to support that claim is Spurlock's own testimony, which the ALJ expressly found non-credible (AR 32).  Spurlock hasn't challenged the ALJ's credibility determination, and as a practical matter Spurlock couldn't possibly win such a challenge (*see* AR 651–54).  None of the mental-health evaluations in the record suggest that Spurlock's ADHD is so extreme that the ALJ's "no tasks requiring hypervigilance" determination is wrong (*see* AR 341–47 (opinion of Dr. Michaels), 377–87 (assessment of Dr. Brooks), 393 (evaluation of Dr. Balson)).  Even the medical

17

opinion most favorable to Spurlock's cause fails to say anything concrete that would be contrary to the ALJ's determination on this point (*see* AR 564–55 (opinion of Dr. Flores)). The ALJ's determination as to the functional limitations caused by Spurlock's mental impairments is supported by substantial evidence. Accordingly, it must be affirmed.

Spurlock argues that the ALJ's vocational analysis is unsupported because it is premised on flawed mental RFC conclusions. Because the Court affirms the RFC conclusions, it follows that the vocational analysis must also be affirmed.

### Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED.


Dated this 22nd day of September, 2014.

BY THE COURT:


/s/ Michael J. Watanabe
MICHAEL J. WATANABE
United States Magistrate Judge